IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AQUASOURCE HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| OXXYTEC, INC., MACHAIRA ENERGY, | § | CIVIL ACTION NO. H-11-1681 |
| LLC, MARC FISHLOCK, CARY | § | |
| CARMACK, KEN PALMER, WENDELL | § | |
| HEFTON, and WILLIAM SHAFER | § | |
| a/k/a BILL SHAFER, | § | |
| | § | |
| Defendants. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Aquasource Holdings, LLC ("Aquasource") brings this action against Oxxytec, Inc. ("Oxxytec"), Machaira Energy, LLC ("Machaira"), Marc Fishlock, Cary Carmack, Ken Palmer, Wendell Hefton, and William Shafer a/k/a Bill Shafer claiming unfair competition, breach of contract, breach of fiduciary duty, conversion, misappropriation of trade secrets, and statutory theft of trade secrets. Defendant William Shafer removed the action from the 61st Judicial District Court of Harris County, Texas, where it was filed under Cause Number 2011-19815 (Docket Entry No. 1). Pending before the court is Plaintiff Aquasource Holdings, LLC's Motion to Remand Pursuant to 28 U.S.C. § 1447(c) (Docket Entry No. 10). For the reasons explained below, the motion to remand will be granted.

## I.  Factual and Procedural Background

**A.   Underlying Facts**

In June of 2010 Aquasource "purchased substantially all of the assets" of Klean America, Inc. and Klean Innovations, Inc. (collectively, "Klean"), including four patents and two "patented units" that relate to a technology used to super oxygenate water (the "Technology").[1]  Prior to the asset purchase, William Shafer entered into a consultant agreement with Klean, pursuant to which he agreed to not disclose Klean's confidential information and trade secrets, and to refrain from engaging in consulting business with Klean's competitors.[2]  Klean's consultant agreement with Shafer was assigned to Aquasource through the asset-purchase agreement.[3]

According to Aquasource, defendants Fishlock and Carmack met with representatives of Klean, and later with representatives of Aquasource, in an effort to gain control of the assets that utilized the Technology, but were rebuffed on both occasions.[4] Aquasource alleges that Shafer sat in on one of these meetings.[5]

---

[1]Plaintiff Aquasource Holdings, LLC's Original Petition and Request for Temporary Restraining Order and Injunction ("Petition"), Exhibit C to Defendant, William Shafer a/k/a Bill Shafer's Notice of Removal ("Notice of Removal"), Docket Entry No. 1, ¶ 12.

[2]Id. ¶¶ 15–17.

[3]Id. ¶ 15.

[4]Id. ¶¶ 12–13.

[5]Id. ¶ 13.

Shafer's responsibilities as a consultant for Aquasource gave him access to all of Aquasource's confidential and trade secret information.[6] Aquasource alleges that Oxxytec, Machaira, Fishlock, Carmack, Palmer, and Hefton (collectively, the "Competitors"), knowing of Shafer's relationship with Aquasource, engaged Shafer to acquire information about the Technology.[7] Aquasource further alleges that as a result of obtaining this confidential information, the Competitors built two units that employ the Technology, marketed material championing the Technology, and began testing the units at a wastewater treatment facility.[8] The marketing materials allegedly list Shafer as Oxxytec's technology expert.[9]

**B.  Procedural History**

On March 30, 2011, Aquasource brought suit against the Competitors and Shafer in Texas state court.[10] In its petition, Aquasource summarizes its causes of action by alleging the following:

> This case involves a malicious attempt by Defendants to steal Plaintiff's Technology including its proprietary and confidential intellectual property and trade secrets

---

[6] Id. ¶ 18.

[7] Id. ¶ 20.

[8] Id. ¶¶ 21–22.

[9] Id. ¶ 21.

[10] Id. ¶¶ 1–9.

-3-

in order to obtain advanced technology necessary to
compete in the industry. The pressing reason for
Defendants' trade secret theft is that Plaintiff is the
leader in the development of this advanced intellectual
property. In order to make up for its developmental
deficiencies, Defendants embarked upon a course of
industrial espionage through which it misappropriated
Plaintiff's trade secrets and engaged in unfair
competition. Those actions were carried out through a
calculated scheme to raid Plaintiff of its key consultant
with knowledge of the Technology that the Defendants
sought.[11]

Aquasource's specific allegations are as follows:

24.   Defendants' actions constitute unfair competition
      against Plaintiff. Defendants falsely represented
      [their] intentions and plans . . . in hopes that
      they would induce Plaintiff to disclose to them
      some of its most confidential . . . information.
      When their attempts failed, Defendants set out to
      misappropriate Plaintiff's confidential and
      proprietary information . . . by . . . raiding
      Plaintiff's key technical consultant, Shafer, and
      taking his knowledge . . . in the development
      of . . . similar if not the same product thereby
      saving a significant amount of investment in
      research and development at Plaintiff's
      expense. . . .

25.   Shafer unfairly competed against Plaintiff by
      breaching his contractual and fiduciary duties to
      Plaintiff by using Plaintiff's own confidential and
      proprietary information . . . to assist Defendants
      to develop competing technology. . . .

      . . . .

27.   . . . Defendants are liable to Plaintiff for
      misappropriation of Plaintiff's trade secrets.

      . . . .

35.   Shafer rendered consulting services to Defendants
      in violation of paragraph 4 of [his consulting

---

[11]Id. ¶ 23.

-4-

agreement].   In doing so, Shafer violated para-
graph 5 of [his consulting agreement] . . . .

36.   Defendants   willfully   and   intentionally   induced
      Shafer   to   breach   their   contractual   duties   to
      Plaintiff . . . .

37.   Defendants conspired with and assisted Shafer in
      the violation of [Shafer's consulting agreement].

      . . . .

39.   Defendants have wrongfully exercised dominion and
      control over Plaintiff's personal property in a
      manner   inconsistent   with   Plaintiff's   exclusive
      right to said property.

      . . . .

42.   Defendants      have      committed      theft      of
      Plaintiff's . . . trade secrets . . . pursuant to
      Section 134.002(2) of the Texas Civil Practice[]
      and Remedies Code.

43.   . . . Defendants have committed theft of trade
      secrets as defined by Section 31.05(b) of the Texas
      Penal Code . . . .[12]

Aquasource's allegations can essentially be construed as state-law

causes of action for unfair competition, misappropriation of trade

secrets, breach of contract, tortious interference with business

relations,  civil conspiracy, conversion, and statutory theft.[13]

    Shafer, with the consent of the Competitors, removed the

action, asserting that this court has federal-question jurisdiction

under 28 U.S.C. § 1338(a) because "[i]ssues of patent law are a

---

[12]Id. ¶¶ 24-25, 27, 35-37, 39, 42-43.

[13]Aquasource also seeks a temporary restraining order enjoining
the defendants from using any wrongfully obtained information or
materials.  Id.

-5-

necessary element of one of [Aquqasource's] well-pleaded claims."[14]
Aquasource moves for remand on grounds that none of its state-law
causes of action require a fact-finder to decide a substantial
question of patent law.[15]

## II.  **Removal Standard**

A defendant has the right to remove a case to federal court
when federal jurisdiction exists and the removal procedure is
properly followed.  See Manguno v. Prudential Prop. and Cas. Ins.
Co., 276 F.3d 720, 723 (5th Cir. 2002) (citing 28 U.S.C. § 1441).
Shafer, as the party seeking to invoke federal jurisdiction, bears
the burden of showing that Aquasource's state-court suit is
properly removable to federal court.  Hertz Corp. v. Friend, 130
S. Ct. 1181, 1194 (2010); Gasch v. Hartford Accident & Indem. Co.,
491 F.3d 278, 281 (5th Cir. 2007).  When considering the propriety
of removal, federal courts generally base decisions about subject-
matter jurisdiction on the plaintiff's allegations as they existed
when the defendant removed the action.  Kidd v. Southwest Airlines
Co., 891 F.2d 540, 546 (5th Cir. 1990).  Doubts about the propriety
of removal are to be resolved in favor of remand.  Manguno, 276
F.3d at 723.

---

[14]Notice of Removal, Docket Entry No. 1, ¶ 10.

[15]Plaintiff Aquasource Holdings, LLC's Motion to Remand
Pursuant to 28 U.S.C. § 1447(c) ("Motion to Remand"), Docket Entry
No. 10, pp. 4-6.

### III.  Analysis

Federal district courts have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents[.]" 28 U.S.C. § 1338(a). "The phrase 'arising under' has the same meaning in § 1338 as it does in § 1331, the general federal-question provision." Biotechnology Indus. Org. v. District of Columbia, 496 F.3d 1362, 1368 (Fed. Cir. 2007) (citing Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 122 S. Ct. 1889, 1893 (2002)). A civil action thus "arises under" the federal patent laws only when the well-pleaded complaint establishes that either (1) federal patent law creates the cause of action or (2) the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims. Christianson v. Colt Indus. Operating Corp., 108 S. Ct. 2166, 2174 (1988). Here, since it is undisputed that federal patent law does not create any of Aquasource's claims, the only issue is whether its claims necessitate the resolution of a substantial question of federal patent law.

The mere mentioning of a patent in the complaint does not create a substantial issue of patent law, Uroplasty, Inc. v. Advanced Uroscience, Inc., 239 F.3d 1277, 1280 (Fed. Cir. 2001), nor does a claim arise under the patent laws simply because a patent issue appears in a defense to a claim. Biotechnology Industry, 496 F.3d at 1368. Moreover, "[a] claim supported by

-7-

alternative theories in the complaint may not form the basis for
section 1338(a) jurisdiction unless patent law is essential to each
of those theories." Uroplasty, 239 F.3d at 1279.  On the other
hand, a plaintiff may not defeat section 1338(a) jurisdiction
simply by omitting necessary federal patent-law questions in the
complaint through artful pleading.  Christianson, 108 S. Ct. at
2174 n.3.

　　　Shafer argues that because all of Aquasource's causes of
action depend on the existence of a trade secret, and because the
determination of the existence of a trade secret depends on whether
any of the information comprising the trade secret exists outside
the scope of Aquasource's patents, the fact-finder will be required
to construe the patent, and substantial questions of federal patent
law will therefore need to be resolved.[16]  Shafer's argument is
unavailing.

　　　Under Texas law trade secret misappropriation is established
by showing "(a) a trade secret existed; (b) the trade secret was
acquired through a breach of a confidential relationship or
discovered by improper means; and (c) use of the trade secret
without authorization from the plaintiff." Tewari De-Ox Sys., Inc.
v. Mountain States/Rosen, L.L.C., 637 F.3d 604, 610 (5th Cir. 2011)
(quoting Phillips v. Frey, 20 F.3d 623, 627 (5th Cir. 1994)).  A

---

[16]Notice of Removal, Docket Entry No. 1, ¶ 11; Defendant
Shafer's Response in Opposition to Aquasource's Motion to Remand
("Defendant's Response"), Docket Entry No. 13, ¶¶ 6-14.

-8-

trade secret is defined as "any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." In re Bass, 113 S.W.3d 735, 739 (Tex. 2003) (orig. proceeding). In determining whether information fits within this definition Texas courts consider the following six nonexclusive factors: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. In re Union Pacific R. Co., 294 S.W.3d 589, 592 (Tex. 2009). Subject matter publicly disclosed, including that which is disclosed in an issued patent or in a published patent application, is not secret and thus cannot be protected as a trade secret. Luccous v. J.C. Kinley Co., 376 S.W.2d 336, 338 (Tex. 1964); Mountain States/Rosen, 637 F.3d at 611–12.

Contrary to Shafer's assertions, no knowledge or application of the patent laws is necessary to judge whether the subject matter of a trade secret has been disclosed. Determining whether Aquasource possessed a protectable trade secret will require the fact-finder to decide what information, if any, was in the public

domain, whether by the issuance of a patent or otherwise, and what, if any, information had not been disclosed, such as information relating to the testing of the patented units at the wastewater treatment facilities, which occurred after the patent was obtained. While the "four patents and two patented units" may very well serve as evidence that Aquasource did or did not possess a trade secret, their mere existence does not raise a substantial question of patent law. Uroplasty, 239 F.3d at 1280 (citing Consol. World Housewares, Inc. v. Finkle, 831 F.2d 261, 265 (Fed. Cir. 1987). In sum, the patent law issues raised by Shafer are not essential to the resolution of any of Aquasource's claims. Bd. of Regents, Univ. of Tex. Sys. v. Nippon Tel. & Tel. Corp., 414 F.3d 1358, 1363 (Fed. Cir. 2005).

Shafer argues that Aquasource "has made the validity and/or enforceability of its patent rights an issue" because its alleged trade secret, as defined in its petition, was disclosed in its entirety upon the issuance of the patents. Even though "issues of inventorship, infringement, validity and enforceability present sufficiently substantial questions of federal patent law to support jurisdiction under section 1338(a)," Board of Regents, 414 F.3d at 1363, Shafer does not cite to any authorities in support of his argument that determining whether a party had a trade secret raises an issue of the enforcement or validity of the patent. Even if Shafer's contention that the trade secret consists solely of the

-10-

Technology is true, which is debatable,[17] a federal patent-law
defense cannot be the basis for section 1338(a) jurisdiction.
Christianson, 108 S. Ct. at 2174; Biotechnology Industry, 496 F.3d
at 1368.  Moreover, Aquasource has pleaded a state-law claim for
misappropriation of trade secrets that can be supported under a
non-patent theory.  Uroplasty, 239 F.3d at 1279 ("A claim supported
by alternative theories in the complaint may not form the basis for
section 1338(a) jurisdiction unless patent law is essential to each
of those theories.").

Aquasource's claims for breach of contract, statutory theft,
conspiracy, and unfair competition also do not require the
resolution of a substantial question of patent law.  See, e.g.,
Board of Regents, 414 F.3d at 1362–65 (holding that a plaintiff's
state-law claim for tortious interference with business relations
did not arise under patent law); Uroplasty, 239 F.3d at 1279

---

[17]Shafer repeatedly asserts that the scope of Aquasource's
"trade secret," as that term is defined in the petition, only
encompasses information that was required to be disclosed through
the patent process.  Defendant's Response, Docket Entry No. 13,
¶¶ 6, 8, 11.  Shafer grounds this assertion on the fact that
Aquasource defined the "Technology" as "four patents and two
patented units."  Petition, Exhibit C to Notice of Removal, Docket
Entry No. 1, ¶ 12.  The relevant question, however, is not whether
the term "Technology" refers only to the patents and the patented
units, but whether Aquasource's trade secrets encompass more than
just the Technology.  Aquasource alleges that its trade secrets
encompass the "research and other documents concerning the
Technology" and the "development, manufacturing, and testing
process of the Technology."  Id. ¶¶ 18–19.  Taking Aquasource's
allegations as true, not all of Aquasource's trade secrets would
have been disclosed during the patent process.  For example,
research and testing was conducted on the two patented units after
the patents were obtained.

(state-law claims for trade secret misappropriation, breach of fiduciary duty, and breach of contract did not arise under patent law); Speedco, Inc. v. Estes, 853 F.2d 909, 913 (Fed. Cir. 1988) (holding that "the fact that patent issues are relevant under state contract law to the resolution of a contract dispute cannot possibly convert a suit for breach of contract into one 'arising under' the patent laws"). Whether Aquasource is entitled to relief on these claims depends on the relationship between Aquasource and Shafer, including both parties' obligations under the consultant agreement, communications between Shafer and the Competitors, and whether the allegedly stolen information was a trade secret, and does not depend on a substantial question of patent law.

Aquasource also seeks reimbursement of the costs, expenses, and attorneys' fees that were incurred as a result of removal, which may be awarded at the court's discretion pursuant to 28 U.S.C. § 1447(c). There is no automatic entitlement to such an award, however. Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 292 (5th Cir. 2000). The question the court should consider is whether the defendant had objectively reasonable grounds to believe the removal was legally proper. Id. Even though the court concludes that removal was improper, the grounds on which the defendants removed the action were not objectively unreasonable. Moreover, Aquasource has not provided any documentation of the fees or costs incurred in preparing the motion to remand. The court will

-12-

therefore deny Aquasource's request for costs, expenses, and attorneys' fees.

### III.  Conclusion and Order

Because federal law does not create Aquasource's state-law causes of action and because Aquasource's right to relief does not depend upon the resolution of a substantial question of federal law, the court does not have subject matter jurisdiction over this action.  Accordingly, Plaintiff Aquasource Holdings, LLC's Motion to Remand Pursuant to 28 U.S.C. § 1447(c) (Docket Entry No. 10) is **GRANTED**.  This case is **REMANDED** to the 61st Judicial District Court of Harris County, Texas.  The clerk will promptly provide a copy of this Memorandum Opinion and Order to the District Clerk of Harris County, Texas.

**SIGNED** at Houston, Texas, on this the 28th day of July, 2011.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-13-